IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANGEL MALDONADO,

      Plaintiff,

vs.                                                                                     No. CIV 09-0616 MV/CG

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.*

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants' Amended Motion to Dismiss or, Alternatively, for Summary Judgment [Doc. 38], and Plaintiff's Opposed Motion to Consolidate Cases Pursuant to Fed. R. Civ. P. 42(a) [Doc. 35]. The Court, having considered Defendants' Motion, Plaintiff's Response [Doc. 43], Defendants' Reply [Doc. 46], the parties' supplemental briefing, the relevant law and being otherwise fully informed, finds that Defendants' Motion to Dismiss is well-taken and will be **GRANTED** for lack of subject matter jurisdiction. As the granting of this Motion disposes of the case, Plaintiff's Opposed Motion to Consolidate will be **DENIED** as moot.

**BACKGROUND**

Plaintiff is a native and citizen of Mexico who entered the United States without permission and without detection. Although it is unclear exactly when Plaintiff first entered the United States, it is undisputed that he was present between 1996 and 2000, when his unlawful presence was detected and he was granted voluntary departure. It is also undisputed that Plaintiff reentered the United States without permission or detection sometime later in 2000.

On September 17, 2002, Plaintiff married Lidia Sanchez Diaz, who became a naturalized United States citizen on March 20, 2007. On January 19, 2009, Ms. Sanchez Diaz filed a petition with the United States Citizenship and Immigration Services (USCIS) on Plaintiff's behalf for lawful resident status. On the same date, Plaintiff filed an Application to Register Permanent Residence or Adjust Status.

In these applications, Plaintiff and Ms. Sanchez Diaz relied on the Tenth Circuit's reading of the LIFE Act, codified at 8 U.S.C. § 1255, which provides pathways to legal status for certain individuals with family ties in the United States who would otherwise be ineligible to adjust their status. Specifically, the Act allows certain individuals who entered without inspection and who would therefore otherwise be ineligible for adjustment of status, to nonetheless seek adjustment upon payment of a penalty. 8 U.S.C. § 1255. However, this language is in conflict with a separate provision of the Immigration and Nationality Act (INA), which deems inadmissible for ten years an individual who enters the United States without permission after being "unlawfully present in the United States for an aggregate period of more than 1 year." 8 U.S.C. § 1182(a)(9)(C)(i)(I).

In *Padilla-Caldera v. Gonzales*, 453 F.3d 1237, 1244 (10th Cir. 2005), the Tenth Circuit analyzed the apparent conflict between these two provisions and concluded:

> We see no basis upon which we may conclude that Congress intended § 1182(a)(9)(C)(i)(I) to . . . remain untouched by the LIFE Act[]. . . . Aided by traditional canons of statutory construction, we resolve the statutory conflict in this case by concluding that the circumstances surrounding the passage of the LIFE Act clearly indicate that it applies to status-violators who have been in the United States for an aggregate period of over one year.

However, two years after the Tenth Circuit's decision in *Padilla-Caldera*, the Board of Immigration Appeals (BIA) expressly rejected the Tenth Circuit's position and held that absent a

2

waiver of admissibility, individuals who are inadmissible under § 1182(a)(9)(C)(i)(I) cannot qualify for adjustment of status under § 1255.  *Matter of Briones*, 24 I. & N. Dec. 355, 371 (BIA 2007).

On June 5, 2009, USCIS issued a decision denying Plaintiff's application to adjust his status, citing as basis for denial the fact that Plaintiff had been unlawfully present in the United States for at least one year and had subsequently reentered without permission.  Compl., Ex. 7.  Accordingly, USCIS found that Plaintiff was inadmissible pursuant to § 1182(a)(9)(C)(i)(I).[1]  The denial letter states that no waiver is available for an individual who is inadmissible under this subsection.  Compl., Ex. 7.  As basis for its conclusion that no waiver is available, the denial letter cites a USCIS memorandum in which the agency expressly rejects *Padilla-Caldera* and adopts the BIA's decision finding no waiver in *Matter of Briones*.  *Id*.  The denial letter concludes: "There is no appeal from the decision of the Field Office Director."  *Id*.

In response to USCIS's denial of his application for adjustment of status, Plaintiff filed the instant Complaint [Doc. 1].  His Complaint is styled as a prayer for review of agency action pursuant to the Administrative Procedure Act, a petition for a writ of mandamus, and a request for declaratory relief.  Defendants now move for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court has no jurisdiction to rule on Plaintiff's claims.

---

[1]The Act provides for a waiver of inadmissibility for individuals petitioning for status under the Violence Against Women Act, but not for those in Plaintiff's position.  8 U.S.C. § 1182(a)(9)(C)(iii).

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction.  "The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  A federal court is presumed to lack jurisdiction "absent a showing of proof by the party asserting federal jurisdiction." *United States ex rel. Precision Co. V. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992).  Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a complaint if the court lacks jurisdiction over the subject matter.

**DISCUSSION**

Plaintiff argues that USCIS acted impermissibly in instructing its field officers to disregard established Tenth Circuit precedent and to instead apply the contrary standard announced by the BIA.  Before this Court may hear Plaintiff's claims, he must exhaust all remedies available to him at the administrative level.  *See Darby v. Cisneros*, 509 U.S. 137, 146 (1993) ("When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is final . . . and therefore subject to judicial review.") (quotations omitted).  The exhaustion of administrative remedies "is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

Here, Plaintiff  received a denial letter from USCIS in which the agency wrote: "There is no appeal from the decision of the Field Office Director."  Compl., Ex. 7.  However, this does

not amount to the agency's position that Plaintiff had exhausted the administrative remedies available to him. Indeed, the Code of Federal Regulations provides: "No appeal lies from the denial of an application [for adjustment of status] by the director, but the applicant . . . retains the right to renew his or her application in proceedings under 8 CFR part 240." 8 C.F.R. § 245.2(a)(5)(iii). The provisions of Part 240 pertain to removal proceedings before an Immigration Judge.[2] As Plaintiff may formally renew his request for adjustment of status upon the commencement of removal proceedings, he has failed to exhaust administrative remedies, and judicial review is not yet available under the Administrative Procedure Act (APA). Accordingly, this Court has no subject matter jurisdiction over Plaintiff's APA claim.

Moreover, the pertinent provisions of the INA preclude this Court's review of Plaintiff's claims. 8 U.S.C. § 1252(a)(2)(B) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . [including 28 U.S.C. § 1361], and except as provided in subparagraph (D), . . . no court shall have jurisdiction to review – (i) any judgment regarding the [discretionary] granting of relief under section . . . 1255 of this title. . . .

8 U.S.C. § 1252(a)(2)(B). Section 1255 governs adjustment of status. Subparagraph (D) of § 1252(a)(2) provides an exception to the general rule that courts lack jurisdiction to review decisions concerning adjustment of status:

> Nothing in subparagraph (B) or (C) . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with *an appropriate court of appeals* in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis added).

---

[2]Immigration court is a non-judicial body. These courts form part of the Executive Branch of government; specifically, they constitute a branch of the Department of Justice's Executive Office for Immigration Review.

Plaintiff argues that USCIS's denial of his application fell outside the scope of the agency's discretion because the denial was based on an arbitrary and capricious policy of disregarding the Tenth Circuit's decision in *Padilla-Caldera* in favor of the BIA's subsequent decision in *Matter of Briones*. Accordingly, argues Plaintiff, the above-quoted provisions of the INA do not apply to him, as USCIS's denial of his application was not a discretionary decision. *See* 8 U.S.C. § 1252(a)(2)(B) (titled "Denials of discretionary relief").

Plaintiff's argument lacks merit. Although *Padilla-Caldera* and *Matter of Briones* do indeed directly conflict, USCIS did not act arbitrarily or capriciously in opting to follow BIA precedent over a decision the Tenth Circuit issued without the benefit of the BIA's expertise. Indeed, USCIS's policy is in line with the Supreme Court's decision in *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), where the Court reaffirmed the inherent expertise that agencies such as the BIA hold in the interpretation of statutes they are charged with implementing and enforcing. In *Brand X*, the Court held that a circuit court must defer to an agency's interpretation of a statute regardless of the circuit court's contrary precedent, provided the prior precedent was an interpretation of statutory ambiguity. 545 U.S. at 982-83.

While one might argue that the Tenth Circuit in *Padilla-Caldera* was not in fact interpreting a statutory ambiguity, but rather the statute's plain and unambiguous language, the opposite argument is tenable. Although the Tenth Circuit saw "no basis" to conclude that the LIFE Act did not apply to individuals who were inadmissible because their aggregate unlawful presence exceeded one year, *Padilla-Caldera*, 453 F.3d at 1244, the same court acknowledged four years later that the statute was in fact ambiguous as to this precise issue. *Herrera-Castillo*

*v. Holder*, 573 F.3d 1004, 1009 (10th Cir. 2009) ("*Padilla-Caldera* . . . did not have the benefit of guidance from the BIA in resolving the statutory ambiguity."). Indeed, the *Herrera-Castillo* court noted that *Padilla-Caldera's* value was limited in light of the BIA's subsequent decision in *Matter of Briones*, as well as the Supreme Court's decision in *Brand X*.

This review of the principles of appropriate deference to agencies such as the BIA compels the Court to conclude that USCIS did not act arbitrarily or capriciously in implementing a policy according to the BIA's conclusion that the LIFE Act does not create a waiver of admissibility for individuals in violation of § 1182(a)(9)(C)(i)(I). As the USCIS policy is neither arbitrary nor capricious, rendering the agency's denial of Plaintiff's application discretionary, the provisions of 8 U.S.C. § 1252 regarding discretionary relief apply to the instant case. Although Plaintiff alleges that USCIS's policy violates the Tenth Circuit's decision in *Padilla-Caldera*, and hence raises a question of law, the INA provides clear instruction that his claim should be raised in the Court of Appeals rather than a district court. Accordingly, this Court lacks subject matter jurisdiction to address Plaintiff's claims.

Finally, the Court addresses Plaintiff's Petition for Writ of Mandamus. The Court has jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. This section "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Marquez-Ramos v. Reno*, 69 F.3d 477, 478-79 (10th Cir. 1995) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). "The importance of the term 'nondiscretionary' cannot be overstated. . . . [T]o the extent a statute vests discretion in a public official, his exercise of that discretion should not be

controlled by the judiciary." *Marquez-Ramos*, 69 F.3d at 479 (quotation omitted).

As discussed, Plaintiff has not exhausted all other avenues of relief in that he has failed to exhaust administrative remedies. Moreover, the USCIS officer who denied his application for adjustment of status owed Plaintiff no nondiscretionary duty. *See* 8 U.S.C. § 1255(a) (providing that the Attorney General may, "in his discretion and under such regulations as he may prescribe," adjust an individual's status to that of a lawful resident if the individual "is eligible to receive an immigrant visa and is admissible to the United States for permanent residence"). The Court declines to issue a writ of mandamus compelling USCIS to perform a discretionary duty.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Amended Motion to Dismiss [Doc. 38] is **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiff's Motion to Consolidate [Doc. 35] is **DENIED** as moot.

Dated: this 11th day of March, 2010.

_____
MARTHA VAZQUEZ
U.S. DISTRICT COURT JUDGE